AETNA INS. CO. *et al. v.* ROBERTSON, STATE REVENUE AGENT.

[90 South. 120. No. 22432.]

1. APPEAL AND ERROR. *Decree for penalty for violating Anti-Trust Law can be stayed only by supersedeas in double the amount; but decree to pay over impounded funds may be stayed by bond for costs, interest, and damages.*

A decree against insurance companies for eight million dollars as a penalty for violating the Anti-Trust Law is a money judgment, which can only be stayed by a *supersedeas* bond in double the amount, under section 50, Code of 1906 (section 26, Hemingway's Code); but the further order, in the same decree, to pay over impounded funds in the hands of the court, pending appeal without *supersedeas* of main judgment, is a separable judgment, and may be stayed by *supersedeas* granted by a justice of this court upon giving bond for costs, interest, and damages, under section 56, Code of 1906 (section 32, Hemingway's Code).

2. APPEAL AND ERROR.    *Surety companies authorized to do business in state may be accepted on appeal bonds.*

Surety companies authorized to do business in this state may be accepted on appeal bonds as provided by statute; and such bonds are civil and contractual obligations, and not for penalties for violation of state statutes.

3. APPEAL AND ERROR.    *Surety company owned by appellant cannot go upon appeal bond.*

A surety company owned and controlled by an appellant insurance company cannot go upon appeal bond of such insurance company.

APPEAL from chancery court of Hinds county.

HON. V. J. STRICKER, Chancellor.

Action by Stokes V. Robertson, State Revenue Agent, against the Aetna Insurance Company and others. Judgment for plaintiff, and defendants appeal. On motion by appellee to discharge a *supersedeas* staying an order to pay over to plaintiff certain money impounded in the hands of receivers. Motion overruled.

See, also, 88 So. 883.

*Clayton D. Potter* and *Chalmers Potter,* for motion.

*Watkins, Watkins & Eager, R. L. McLaurin, J. B. Harris, J. H. Doyle* and *William Thompson,* for opposed.

HOLDEN, J., delivered the opinion of the court.

This is a motion here to discharge a *supersedeas* granted by Justice Anderson of this court, staying the order of the chancellor, condemning, and to pay over to Stokes V. Robertson, state revenue agent, certain money impounded in the lower court, in the hands of the receivers appointed by the court in the suit of the revenue agent against the Aetna Insurance Company and a large number of other insurance companies. The money so impounded was brought into the court by attachment and other process, and there held by the receivers to await the decision of the chancellor in the suit of the revenue agent against the insurance companies to recover from the insurance com-

panies penalties for the violation of the anti-trust laws of the state of Mississippi.

Upon the final hearing of the antitrust suit a decree was rendered against the insurance companies, in the aggregate for about eight million dollars. In addition to the decree of liability against the insurance companies for the sum of eight million dollars, the court further decreed that the impounded money in the hands of the receivers be condemned to pay the decree, that the title to said funds be divested out of the insurance companies and be vested in the revenue agent for the benefit of the state and that the receivers should immediately pay over said money to the revenue agent in part settlement of the decree against the insurance companies; the amount of the impounded money, ordered paid over, being about five hundred thousand dollars.

The insurance companies appealed from the decree against them for eight million dollars without *supersedeas,* and applied to Justice Anderson for a *supersedeas* as to that portion of the decree directing the impounded funds to be forthwith paid over to the revenue agent. Whereupon Justice Anderson granted a *supersedeas* to stay that part of the judgment ordering the impounded funds to be paid over to the revenue agent, until a decision is rendered by this court in the main case. The order granting the *supersedeas* provides that each of the insurance companies shall enter into a bond of five hundred dollars to cover the cost of appeal, and the further sum of twenty-five per cent. of the amount of their respective funds impounded, conditioned to pay damages and interest should the decree of the lower court in the main case be affirmed. The required bonds were furnished and approved by the clerk of the chancery court.

The motion of the revenue agent now before us to discharge the *supersedeas* presents for our consideration three propositions which merit discussion:

First, it is contended that the decree of liability against the insurance companies for eight million dollars is a

money judgment which cannot be stayed by *supersedeas* unless bond be given in a penalty double the amount of the judgment appealed from, and that the order of the chancellor to pay over the impounded funds is not separable from the main money judgment and cannot be stayed except by a *supersedeas* bond as required by section 50, Code

Second, that the bonds furnished by the appellant insurance companies are insolvent and insufficient because the sureties thereon are foreign surety companies with insufficient assets in this state out of which the amount of the bonds could be made, and that the obligations could not be enforced against them in their home states because such recovery would be for a penalty for violating the statutes of this state which no other state courts would enforce.

Third, that the surety bonds approved to the extent of fifty-one thousand, seven hundred six dollars and four cents in the Hartford Accident & Indemnity Company and the bonds to the extent of sixty-seven thousand, six hundred twenty-eight dollars and fifty-nine cents in the Royal Indemnity Company afford no protection to the appellee revenue agent because the Hartford Indemnity Company is under the management, control, and ownership of the Hartford Fire Insurance Company, one of the appellants here; and the Royal Indemnity Company is under the management, control, and ownership of the Royal Insurance Company, the Liverpool, London & Globe and the North British & Mercantile Company, appellants, and for this reason are not proper sureties on the bonds.

The *supersedeas* staying the order of the chancellor to pay over the impounded funds to the revenue agent was granted by Justice Anderson under the authority of section 56, Code of 1906 (section 32, Hemingway's Code), which reads as follows: "In any case of an appeal to the supreme court, where no special provision is made by law for a *supersedeas* of the judgment or decree appealed from, or for the bond to be given in such case, a *supersedeas* may be allowed by the court rendering the judgment or decree appealed from or by the judge thereof, or by the supreme

court or any of the judges of said court, upon such bond, with such sureties as said court or judge may direct in the order for a *supersedeas.*"

The main question presented for our decision is whether or not the *supersedeas* granted comes within the authority of the above section 56, Code of 1906 (section 32, Hemingway's Code), or whether section 50, Code of 1906 (section 26, Hemingway's Code), is alone controlling in the case; said section 50, Code of 1906 (section 26, Hemingway's Code), reads as follows: "On appeal from any interlocutory decree, where the chancellor shall allow a *supersedeas,* and on appeal from a final decree of the chancery court, or the final judgment of a circuit court where the appellant shall desire a *supersedeas,* bond shall be given by the appellant, payable to the opposite party, with two or more sufficient resident sureties, or one or more guaranty or surety companies authorized to do business in this state, in a penalty double the amount of the decree or judgment appealed from, or double the amount of the value of the property or other matter in controversy, to be determined by the officer granting the appeal, conditioned that the appellant will satisfy the judgment or decree complained of, and also such final judgment as may be made in the cause, and all costs, if same be affirmed, and a *supersedeas* shall not issue until such bond shall have been given; and a *supersedeas* shall not be granted in any case pending in the supreme court, unless the party applying for it shall give bond as above required."

It will be noticed that this last section provides for an appeal and *supersedeas,* and also provides that "guaranty or surety companies authorized to do business in this state" may become sureties on appeal bonds. The sureties complained of by the appellee appear to be surety companies authorized to do business in this state.

We think it is unquestionably true that the decree in this case for eight million dollars is a money judgment, and that no stay of its execution by *supersedeas* could be granted unless the provisions of the last section above were

complied with by the execution of bonds in a penalty double the amount of the judgment appealed from, to wit, eight million dollars; but we are of the opinion that the require-ments of this section have no application to the granting of the *supersedeas* staying that part of the judgment order-ing the immediate paying over of the impounded funds to the revenue agent; because that part of the judgment order ing the paying over of the funds is separable from the main judgment of liability for eight million dollars, as it is a separate order with reference to the disposition of the money, or property, in the hands of the court, while the main judgment is a judgment of liability to pay, which is not stayed, except so far as it may be involved in the order to forthwith turn over the impounded money to the success-ful litigant. This being true, we think the granting of the *supersedeas* by Justice Anderson was clearly authorized by the said section 56, Code of 1906 (section 32, Hemingway's Code).

It is true that the order to turn over the impounded funds grows out of and is connected with the main money judgment but it is separable therefrom for the reason that its character is distinctly different from, and it may pre-sent questions for decision by this court independent of those presented by, the main judgment of liability. We have been unable to find any cases in point which hold contrary to the views we have expressed, and the question seems to be largely one of local law to be determined by our statutes governing appeals. The rule recognizing separable parts of a judgment, though all included in the same rendition, is a principle followed in many jurisdic-tions; and an appeal without *supersedeas* as to one part and appeal with *supersedeas* as to another part is allow-able, if the two parts are so different as to be separable. In *State ex rel. Baker* v. *Baxter*, 4 Neb. (Unof.) 869, 96 N. W. 647, the court said: "As the decree awards relator a money judgment for nearly thirteen thousand dollars, which clear-ly comes within the purview of subdivision 1, section 677, Code Civ. Proc., we have no doubt that the order of the

court and the bond are of no effect so far as that portion of the decree is concerned. Relator may have execution notwithstanding. But the remainder of the decree is not governed by said section 677. If it stood alone, the district court, in its discretion, would be authorized to allow a supersedeas upon such terms as to amount and conditions of the bond as it might fix. *Penn Mutual Life Ins. Co.* v. *Creighton Theater Bldg. Co.,* 51 Neb. 659, 71 N. W. 279; *Home Fire Ins. Co.* v. *Dutcher,* 48 Neb. 755, 67 N. W. 766. Can it matter that the decree of foreclosure is part of a decree which awards a money judgment also? We think not. In substance and effect there are two decrees, one for the recovery of money and one for foreclosure of a pledge. To dispose of the whole controversy in one suit, and thus do complete justice to the plaintiff, both are rendered in one proceeding, and as parts of one decree. The reason of the proceeding does not require, and justice to the defendants forbids, that this circumstance be held to compel superseding of the money judgment, which the defendants may not be able to do, in order to stay order of sale pending appeal from the decree of foreclosure, which they may be able and anxious to do if permitted. There appears to be precedent for superseding part of a decree covering more than one subject. *Covington Stock Yards Co.* v. *Keith,* 121 U. S. 248, 7 Sup. Ct. 881, 30 L. Ed. 914. And this court evidently regarded such practice as admissible in *Johnston* v. *Craig,* 61 Neb. 98, 84 N. W. 606."

The law requiring security by bond for appeals with *supersedeas* rests upon the just principle that the successful litigant shall be saved harmless from loss, and secured in the fruits of his victory. This is all that should be required of the losing litigant who desires that his case be reviewed on appeal, and that the status quo be maintained until a final decision is rendered in the cause.

Here we have the actual money safely impounded in the hands of the court, to be turned over or applied according to the judgment of the court when finally given. There can be no good reason or necessity for requiring by bond

the forthcoming of the money at the final decision when the money is already in the hands of the court. No harm or damage can come to the successful litigant so far as this money is concerned by staying it in the safe possession of the court, because a bond has been required and furnished which amply provides for any loss in the way of interest, statutory damages, and the cost of the appeal.

The money in this case remains in the hands of the court instead of being released to the losing litigant, who may later on be required to produce it to satisfy a final judgment of the court. It is now held in court to be dealt with according to the final decision and this is all that could be expected in any event. It seems obvious to us that there is a difference when it comes to requiring a bond in double the amount of the judgment or the property involved where such property is to be released to, or remain in the hands of, the unsuccessful litigant pending an appeal, and where the thing involved is the actual money, not released to or remaining in the hands of the losing party, but held by the court. Property so bonded in double the value thereof may depreciate or waste before the final decision, and thereby cause a loss to the successful party, but this cannot occur in the case of impounded money in the hands of the court.

As to the second point made by appellee, we are led to disagree with the contention for at least two reasons, namely: In the first place the legislature of our state has expressly provided by statute that surety companies authorized to do business in this state may be accepted on appeal bonds, and there is no contention in the record that the sureties on the bonds are not authorized to do business in this state; consequently we are constrained to follow the expressed will of the legislature. Then, again, we are of the opinion that the obligation of the sureties on the bonds can be enforced in the courts of the states of the foreign surety companies because the liability under the bonds is contractual and civil, and not a liability for the violation of a penal statute of our state.

Now, referring to the third and last contention of appellee regarding the invalidity or insufficiency of the bonds furnished by some of the appellant insurance companies, more particularly referred to in the former part of this opinion, we agree with counsel for the appellee that new bonds with other sureties should be given by the appellant insurance companies. We reach this conclusion on account of an affidavit filed by the appellee through his counsel, alleging in effect that the said insurance companies are in fact the same as the said bonding surety companies on their bonds. Of course, an appellant cannot become a surety upon his own bond. The affidavit referred to is here set out, and is not controverted or denied by the appellant insurance companies. "Personally appeared before me the undersigned authority, Chalmers Potter, who, having been first duly sworn, deposeth and says that the Royal Indemnity Company is owned and controlled by the Royal Insurance Company, who in turn also owns and controls the Liverpool & London & Globe Insurance Company, and the North British & Mercantile Insurance Company; that the Hartford Accident & Indemnity Company is owned and controlled by the Hartford Fire Insurance Company; that the above-named Indemnity Companies are sureties on the bonds of certain of the appellants, totalling one hundred nineteen thousand, three hundred thirty-five dollars and sixty-three cents; that said sureties have no property whatsoever within the borders of the state of Mississippi or where the process of this court can reach."

Therefore, we sustain the contention of the appellee revenue agent on his third point, and order that the appellant insurance companies referred to be required to furnish new bonds to the extent indicated, within thirty days after this decision is rendered, to be approved by the chancery clerk of Hinds county, Miss.

The motion to discharge the *supersedeas* is overruled.

ETHRIDGE, J.  I dissent from the conclusion of the majority with reluctance and diffidence.  At the argument I was strongly impressed with the argument that the court had jurisdiction to grant *supersedeas* to preserve the subject-matter of the litigation pending the appeal, for the reason that, if the revenue agent received the moneys impounded, it would be his duty to turn them into the state treasury within one month thereafter, and that, inasmuch as the legislature only meets biennially, and the money could not be withdrawn in the absence of an appropriation by the legislature, with the possibility that the legislature might delay so doing, or refuse so to do, and no legal remedy would be available to the appellants to obtain the repayment of the money.

A careful consideration of the statutes involved has convinced me, however, that the court had no power to grant the appeal superseding the order of the court as to the payment of the money impounded to the revenue agent.  Section 25, Hemingway's Code (section 49, Code of 1906), provides for appeals without *supersedeas*.  Section 26, Hemingway's Code (section 50, Code of 1906), provides for appeals with supersedeas from the final judgment of a circuit or chancery court, and is as follows: "26 (50) *Bond for Supersedeas.*—On appeal from any interlocutory decree, where the chancellor shall allow a supersedeas, and on appeal from a final decree of the chancery court, or the final judgment of a circuit court where the appellant shall desire a supersedeas, bond shall be given by the appellant, payable to the opposite party, with two or more sufficient resident sureties, or one or more guaranty or surety companies authorized to do business in this state, in a penalty double the amount of the decree or judgment appealed from, or double the amount of the value of the property or other matter in controversy, to be determined by the officer granting the appeal, conditioned that the appellant will satisfy the judgment or decree complained of, and also

127 Miss.—29

such final judgment as may be made in the cause, and all costs, if the same be affirmed, and a *supersedeas* shall not issue until such bond shall have been given; and a *supersedeas* shall not be granted in any case pending in the supreme court, unless the party applying for it shall give bond as above required."

Section 28, Hemingway's Code (section 52, Code of 1906), provides for *supersedeas* in cases staying execution, and ejectment and other suits for the possession of property.

Section 29, Hemingway's Code (section 53, code of 1906), provides for *supersedeas* bond to supresede a writ of possession.

Section 30, Hemingway's Code (section 54, Code of 1906), provides for *supersedeas* from a decree to sell real estate.

These are the provisions for specific cases of supersedeas, and in all cases falling within the provisions of these sections a compliance with the sections is necessary. No judge of this or any other court has any power to grant appeals upon any other condition than that prescribed by the statute. In cases, however, not coming within these statutes, the judges of this court, or the judge of the lower court, may grant appeals on such conditions as justice and equity may warrant, under the provisions of section 32, Hemingway's Code (section 56, Code of 1906), which reads as follows:

"32 (56) *Supersedeas in Cases Not Provided for.*—In any case of an appeal to the supreme court, where no special provision is made by law for a *supersedeas* of the judgment or decree appealed from, or for the bond to be given in such case, a *supersedeas* may be allowed by the court rendering the judgment or decree appealed from or by the judge thereof, or by the supreme court or any of the judges of said court, upon such bond, with such sureties as said court or judge may direct in the order for a *supersedeas.*"

After my Brethren of the majority reached the conclusion that this case fell within this last section, I recon-

sidered and re-examined my own opinion with the view of concurring if I could do so consistently with my conception of the law. An extended investigation and much reflection have only confirmed my opinion that this case does not fall within the provisions of section 56 of the Code of 1906 (section 32, Hemingway's Code) above set out.

In order to fully understand the question at issue, it will be necessary to state briefly the subject matter of the suit.

The state revenue agent filed a bill in the chancery court against various insurance companies in the state, of which the appellants are parties, alleging the appellants and others had unlawfully agreed and combined with reference to the subject of insurance and insurance rates within the state in such manner as to violate the statutes of the state, and demanded the penalties imposed by statute under the anti-trust acts for such alleged violation.

Suit was filed in the chancery court and attachment issued under the provisions of section 537 of the Code of 1906 (section 294 of Hemingway's Code), and various residents of the state were made parties defendant for the purpose of subjecting the money and property and other effects in the hands of the resident defendants to the demand of the revenue agent for violations of the anti-trust laws.

The resident parties were served, and filed answer, admitting possession and custody of certain funds. The question arose between the insurance companies and the agents as to whether such service bound or impounded moneys and effects coming into the hands of the agents between the service of the writs and the answer of the agents, and between the service of the writ and the return day thereof.

The insurance companies advised the agents representing them that such funds were not impounded, and instructed the agents to remit the money as speedily as collected to the home offices of the respective companies, and

that such agents would be held harmless by the companies for so doing.

Thereupon the revenue agent applied to the court for the appointment of receivers to collect and manage the property and funds so impounded, pending the suit, which was done, and from the judgments of the court then rendered appeals were prosecuted by the companies, and separate appeals by the agents, which cases are reported in *Aetna Ins. Co.* v. *Robertson,* 88 So. 883, and *Nugent & Pullen* v. *Robertson,* 88 So. 895, where a more detailed statement of the suits is set forth.

Subsequently the causes came on for hearing before the chancellor on the merits, and the chancellor adjudged that the several companies constituting appellants in this cause had violated the laws, as alleged in the bill, and imposed fines upon the several respective companies, varying in amount from four thousand, eight hundred seventy-five dollars to one hundred ninety-five thousand, eight hundred seventy-five dollars for which he rendered judgments against said several companies in favor of the state, and the receivers having collected approximately five hundred thousand dollars from the agents of the respective companies, in varying amounts, the court directed, as a part of its decree, the receivers to pay over to the revenue agent the funds so held by the receivers, with certain reservations of amounts to pay costs, expenses, and other prior claims.

The defendant companies applied to the chancellor for an appeal, with supersedeas only as to the funds in the hands of the receivers, and that such funds be held by the receivers pending an appeal without *supersedeas,* generally, to this court. The chancellor, after investigation, decited that he had no power to grant an appeal with *supersedeas* as to these funds only, and denied the application for *supersedeas,* but granted the appeal. The appellants thereupon applied to a member of this court for an appeal with *supersedeas,* which was granted by said judge, as stated in the majority opinion, and the motion before us is for a discharge of *supersedeas* so granted upon the

grounds stated in the majority opinion, with other grounds.

A consideration of the pleadings in the original suit and the judgment rendered thereon convinces me beyond reasonable doubt that the judgment is not divisible and separable, so far as the order to pay over to the revenue agent the funds in the hands of the receivers, is concerned. If such funds are paid over, the judgment rendered is satisfied to the extent of such payment. If the judgment was satisfied in full by execution upon other property, the funds would go, as of course, back to the companies. There could be no separate satisfaction of the provisions claimed to constitute separable parts of the judgment. The demand of the revenue agent was against the companies for a money judgment. The judgment of the court is for payment of money as penalties. The funds impounded are impounded, not for separable purposes, but solely for the purpose of satisfying the judgment rendered against the companies on the appeal, and for no other purpose whatever.

Section 50 of the Code of 1906 (section 26, Hemingway's Code) expressly provides that the bond to operate as a *supersedeas* shall be in double the amount of the value of the property, or other matter in controversy, and that it shall be conditioned that appellant will satisfy the judgment or decree complained of and such final judgment as may be made in the cause, and all costs.

The judgment appealed from are, as above stated, separate judgments against each of the defendants, and the largest of them is for one hundred ninety-five thousand, eight hundred seventy-five dollars, and *supersedeas* can be granted to each company on the execution of bond in double the amount of the judgment rendered against it. One company is not responsible, under the judgment, for the fine imposed upon the other. Each company can prosecute a separate appeal. These companies are all amply able to secure the *supersedeas* bond because each of them has more property and assets than the bond required would amount to.

In *Beckman* v. *Bost,* 125 Miss. 77, 86 So. 713, there was a decree for two thousand, three hundred twenty-five dollars fixed as a charge against certain real property, consisting of a church and lot; the real estate being valued at five thousand dollars. The chancellor allowed an appeal with *supersedeas* on the execution of a five hundred dollar bond, attempting to grant the appeal under section 56, Code of 1906 (section 32, Hemingway's Code). A motion was made to discharge the *supersedeas,* and the court held that the case was not governed by that section, but was governed by section 54, Code of 1906 (section 30, Hemingway's Code), and ordered the execution of a bond in double the amount of the money decree against the property.

It seems to me that the present case falls squarely within the provisions of this case. The same doctrine is announced by the Iowa court in *Flynn* v. *Des Moines & St. Louis Ry. Co.,* 62 Iowa, 521, 17 N. W. 769.

The appellants rely upon a number of cases but cite from *Mississippi R. R. Co.* v. *James,* 108 Miss. 656, 67 So. 152; *Buckley* v. *George,* 71 Miss. 581, 15 So. 46; *Lum* v. *Reed,* 53 Miss. 71.

In my opinion, these cases, instead of strengthening the contention of the appellants are authorities to the contrary. In the James Case, the court held that, where a case did not fall within the rule prescribed by section 26, Hemingway's Code (section 50, Code 1906), and where the execution of a bond under that statute would not have the effect of superseding the judgment the court would grant the appeal under the provisions of section 4908 of the Code, and that a *supersedeas* was properly granted where it was necessary to prevent a defeat of the purpose for which an appeal by complainant from an interlocutory decree in a suit to enjoin prosecution of an action at law is granted.

I think the test is as to whether the execution of the bond is under section 50, Code of 1906 (section 26, Hemingway's Code), or whether under the sections named in the beginning, where supersedeas is specifically provided; and, if so, then the court has no discretion or power to grant the

appeal under section 56, Code of 1906 (section 32, Hemingway's Code).

The legislature has said what is necessary to procure an appeal with *supersedeas*. A strict compliance with these sections is required where the cases fall within them. If they do not fall within these sections, then the legislature has intrusted the court with the power and discretion as to granting appeals.

In these cases the court is powerless to grant the supersedeas, even though execution might defeat the appeal. The legislature has full power to prescribe the conditions of appeal. Appeals are not matters of right. They lie only in cases provided by law.

The case of *Buckley* v. *George,* 71 Miss. 581, 15 So. 46, is a case where the statute provided that the chancellor may grant an appeal from certain interlocutory decrees, and shall determine whether such appeals shall operate as a *supersedeas*. In that case the chancellor refused to grant the appeal with supersedeas, but granted it without supersedeas, and the Chief Justice of this court, on application to him, granted the appeal with *supersedeas* under a statutory power so to do. That was a case falling within the statute giving the judge judicial discretion, and not in a case where a supersedeas could be obtained as a matter of right by complying with the statute.

There is no contention in this case that a judge of this court could not grant an appeal with *supersedeas* if the case falls within the statute (section 56, Code 1906; section 32, Hemingway's Code), but the contention here is that the appeal with *supersedeas* is provided for, and can be obtained as a matter of right by executing bond conditioned according to section 50 of the Code of 1906 (section 26, Hemingway's Code).

In *Lum* v. *Reed,* 53 Miss. 71, it was held that in a judgment in ejectment it is allowable to supersede the writ of ejectment without superseding the execution of the judgment for mesne profit, and that under the then statutes the writ of error without bond operated as a *supersedeas*

of the writ of possession. In that case the payment of the money judgment would have no effect whatever on the right to possession, and the giving of possession would have no effect whatever on the money judgment for mesne profits.

In other words, the satisfaction of the judgment as to one would not satisfy it nor tend to satisfy it as to the other. Separate executions could be had on each. The two parts of the judgment were entirely 'separable, and not dependent upon each other. One was not an incident of the other. Whereas in the present case the paying of the judgment would, of itself and at once, from that fact alone, discharge the order of the court directing the receivers to pay the money to the revenue agent.

It was said in the argument that the fact that the money is in the possession of the court, and that under the order granted such money would remain in the hands of the court, distinguishes it from an execution. I cannot accept this proposition. The payment of the money under the order of the court executes the judgment to the extent of the money in court. If there was enough money in court to pay the judgment in full, its payment would be a complete execution of the judgment.

Bouvier's Law Dictionary, in defining "execution," says the following: "In practice putting the sentence of law in force (3 Black. Com. 412) ; the act of carrying into effect the final judgment or decree of the court; the writ which directs and authorizes the officer to carry into effect such judgment."

To the same effect Words and Phrases, First and Second Series, Title, "Execution."

Our Code (section 3968, Code 1906, and section 2975, Hemingway's Code), provides as follows: "2975. (3968) *Money and Choses in Action Levied on.*—Money, bank notes, bills, evidences of debt circulating as money, and any judgment or decree belonging to the defendant, may be taken under an execution or attachment and sold or disposed of according to law, or applied to the payment of the

execution or in satisfaction of the judgment in attachment."

It will be noted from this section that money may be seized on execution and may be ordered applied to the payment of the execution or in satisfaction of the judgment in attachment. This section clearly contemplates that money seized shall be applied directly to the payment of the judgment, and not that it shall be sold at public outcry like other property. To apply money in the manner indicated by the statute is clearly the execution of the judgment.

If a judgment is rendered for the payment of a sum of money, and subsequent garnishment issue, and as a result thereof money be paid by the garnishee into court, can the judgment debtor appeal from the application of the money to the judgment, regardless of the amount of the money, by executing a bond for five hundred dollars, not conditioned according to section 50? Manifestly he could not. The law does not contemplate *supersedeas,* by piecemeal or by fractions, of the judgment. It plainly contemplates that the whole of an inseparable judgment shall be superseded or that none of it shall be.

Turning to the various provisions of our law, we find that the whole policy of law is that, when money is involved and it is sought to supersede the carrying out of the provisions of law for the collection of money, the bond shall be conditioned to satisfy the judgment.

Under section 540, Code of 1906 (section 297, Hemingway's Code), it is provided that the debtor may appear and give satisfactory security for performing the decree, and thereby discharge the lien upon the property attached. The law does not give him the right to give security for the forthcoming of the property only, but it puts upon them the obligation of satisfying the judgment. That statute is applicable to this very proceeding before the final judgment. Clearly the appellants could not bond the property without giving bond to satisfy the judgment which might subsequently be rendered. Why, then, should they be allowed,

after the judgment is rendered, to supersede the execution and prevent application of the property condemned to the satisfaction of the judgment without giving bond to satisfy the judgment?

In suits to enjoin proceedings at law, section 609, Code 1906 (section 369, Hemingway's Code), requires the bond to be in double the amount of the debt enjoined, conditioned for payment of money and of costs and damages against the party seeking the injunction in case it is dissolved; and throughout the whole scheme of the statute the penalty is generally found to be double the amount involved and conditioned to satisfy the judgment in the particular case.

Under the second proposition, the motion sets forth that the bonds made in the present cases are made by surety companies all of whom are nonresidents of the state, and none of whom have any property or effects within the state, and that the effect of accepting these sureties will be to defeat the state in recovering its judgment. As these companies are all nonresidents of the state, all having withdrawn from the state and having no property other than that impounded in this suit, then the state cannot collect in case it wins.

This is a suit for a penalty for violation of the state's laws enacted for the benefit of the whole public, and is not a penalty given as a private right to an individual, and it is a familiar principle of law that one state or country will not aid another state or country in giving effect to judgments enforcing its penal laws, or in collecting its revenues.

In *Wisconsin* v. *Pelican Insurance Co.,* 127 U. S. 265, 8 Sup. Ct. 1370, 32 L. Ed. 239, the United States Supreme Court recognizes and enforces this principle, declining to give aid to Wisconsin in enforcing a judgment recovered by the state in its own courts, against an insurance company.

In *State of Arkansas* v. *Bowen,* 20 D. C. (9 Mackey) 291, the District of Columbia refused to enforce a judgment obtained against Bowen as surety on a tax collector's bond containing penalties, and insisted upon the principles an-

nounced in the case of *Wisconsin* v. *Pelican Insurance Co.,*
*supra.* This decision of the court was affirmed by the Court
of Appeals, the highest judicial court of the District of
Columbia, in 3 App. D. C. 537. This case is precisely in
point here. It is contended here that the obligation of the
surety companies is civil and contractual, and that is does
not fall within the principle of *Wisconsin* v. *Pelican In-
surance Co.* In this case, the defendant .Bowen was also
a surety. His obligation was contractual and civil, but it
was founded upon penalties, and the court said it could
not enforce a judgment that contained penalties; that, if
the obligation was merely for the money received by the
tax collector, it possibly could be upheld, but, inasmuch as
it contained penalties, it could not be enforced.

In the present case the whole action is strictly for the
collection of penalties for violating the public laws of the
state. The obligation about which the sureties contract is
to pay, among other things, penalties, in case the appeal
falls, and the whole suit about which the obligation is in-
curred is for penalties, and one common judgment will be
rendered against both the principles and sureties. There
are a large number of authorities in other states holding
that judgments for penalties for the violation of public
statutes or for nonperformance of public·duties will be
considered as penalties within this rule, and will not be
enforced in a foreign state. *First Nat. Bank* v. *Price*, 33
Md. 487, 3 Am. Rep. 204; *Halsey* v. *McLean*, 12 Allen
(Mass.) 439, 90 Am. Dec. 157; *Derrickson* v. *Smith*, 27 N.
J. Law, 166; *Garrison* v. *Howe,* 17 N. Y. 458; *Merchants'
Bank* v. *Bliss,* 35 N. Y. 412; *Harrisburg* v. *Commonwealth,*
26 Pa. 451; See, also, authorities in note, 27 L. R. A. (N.
S.) 739; note, 14 Am. St. Rep. 350, 352; 14 Rose's Notes,
271.

In the case of *Huntington* v. *Attrill*, 146 U. S. 685, 13
Sup. Ct. 224, 36 L. Ed. 1123, the court drew the distinction
between penalties imposed for violation of public statutes
and penalties imposed in favor of individuals for the satis-
faction of individual wrongs and injuries, and held that,

wherever the penalty imposed is for the satisfaction or vindication of private wrong, such judgment would be enforced under the due faith and credit clause of the constitution, but that, where ever the penalties were imposed for the protection of the public as a whole, the action was penal, and within the rule that foreign states would not be required to give aid in their protection.

It is held by practically unanimous authority that the form of the judgment will not preclude the defendant in the foreign state from showing the real nature of the suit. In other words, if judgment is recovered here, the surety upon the bond would have to be sued in a foreign state because nothing can be reached in this state. They have no property or assets whatever, and on suit in a foreign state they could defend on the ground that to give judgment against them would be to aid the state of Mississippi in collecting these penalties.

The majority opinion alludes to the fact that the statute authorizes the acceptance of surety companies authorized to do business in the state, and that the law does not require them to have property within the state, and that, inasmuch as the statute authorizes the acceptance of such surety, the court must accept them whether they have property within the jurisdiction of the state or not.

I do not understand the statute to mean this. Any person has the right to offer another person as a surety, but neither the officer nor the court is required to accept an insolvent surety, and in a case of this kind, where the judgment cannot be enforced beyond the confines of the state, the company having no property within the state, it is insolvent so far as the obligations of this bond are concerned. The law never contemplates that any one should be accepted as a surety unless the process of the court, in case judgment would be rendered against the surety would be effective in collecting and enforcing the obligation.

It is true the statute does not seem to require a surety company to have property in the state, but it was evidently contemplated that, when a surety did business in the state,

it would place within the confines of the state some property or 'effects from which its obligations could be enforced. There are clearly obligations which cannot be enforced beyond the state in any proceeding. Certainly no nonresident surety company should be taken as surety on such obligations unless it has within the state sufficient property to satisfy the obligation.

The legislature's attention should be called to this phase of law, so that the situation may be remedied by suitable legislation.

The insurance companies involved in these suits are scattered throughout the world; numbers of the defendants reside in other states of the Union; some in the British dominions; some in Sweden, and perhaps other countries. The surety bonds ought to be such bonds as the state, without going into foreign jurisdiction, could realize upon if judgment should be rendered thereon.